# UNITED STATES v. ALUMINUM CO. OF AMERICA et al.

District Court, S. D. New York.
Dec. 17, 1941.

226

Thurman Arnold, Asst. Atty. Gen., of Washington, D. C. (John C. Herberg and F. Gwyn Harper, Jr., Sp. Assts. to the Atty. Gen., both of Washington, D. C., Norman A. Adler, Sp. Asst. to the Atty. Gen., of New York City, and Ralph Andresen, Sp. Atty., of Washington, D. C., of counsel), for the United States.

Smith, Buchanan & Ingersoll, of Pittsburgh, Pa., and Hughes, Richards, Hubbard & Ewing, of New York City (William Watson Smith, Frank B. Ingersoll, and Leon E. Hickman, all of Pittsburgh, Pa., and Charles E. Hughes, Jr., L. Homer Surbeck, and William T. Gossett, all of New York City, of counsel), for Aluminum Co. of America and others.

Milbank, Tweed & Hope, of New York City (Morris Hadley, Timothy N. Pfeiffer and Edgar P. Baker, all of New York City, of counsel), for Aluminium Limited and others.

Baldwin, Todd & Young, of New York City (Roger S. Baldwin, of New York City, and A. L. Nash, of Manitowoc, Wis., of counsel), for Aluminum Goods Mfg. Co.

Hughes, Richards, Hubbard & Ewing, of New York City (Charles E. Hughes, Jr., L. Homer Surbeck, and William T. Gossett, all of New York City, of counsel), for Aluminum Manufactures, Inc.

CAFFEY, District Judge.

The motion of the Government asks for two things. These are described in its brief (p. 3) as follows: "(1) an order designating the [oral] opinion delivered from September 30, 1941 to October 9, 1941 as findings of fact and conclusions of law in conformity with Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and (2) the entry of a final order [dismissing the petition] from which the Government may appeal, such order to be entered whether or not the relief sought in (1), supra, be granted." All defendants oppose the motion.

The views of counsel are widely divergent and yet, with apparent confidence, are earnestly pressed on both sides. In these circumstances I think my discussion should be somewhat comprehensive.

I.

On the face of the papers several questions are raised. In a way which will appear hereafter, however, the answer to all of them turns or may turn on a single inquiry. This is, what is the meaning of the first half of subdivision (a) of Rule 52?

There are three sets of minutes parts of which should be examined. In differentiating them those of the trial, down to and including March 12, 1941, will be identified herein as T; those of the September 30 to October 9, 1941, oral opinion as O; and those of the November 29, 1941, argument of the present motion as M. It should be observed that the oral opinion is still in draft form; also that the pages given of the trial minutes follow the text, while the pages given of the opinion and motion minutes precede the text, to which they, respectively, relate.

Rule 52 covers findings of fact and conclusions of law in actions tried, as was the case at bar, on the facts without a jury. The portion of Rule 52 with which we are concerned was derived from Equity Rule 70½, 28 U.S.C.A. § 723 Appendix. The pertinent words in both are identical. They provide that in a non-jury case the trial court "shall find the facts specially and state separately its conclusions of law thereon."

These are the words whose meaning we must try to ascertain.

Equity Rule 70½, adopted June 2, 1930, and put into effect October 1, 1930, was published in 281 U.S. 773. See also, 28 U.S.C.A. § 723 Appendix. Rule 52 is in the Federal Rules of Civil Procedure following 28 U.S.C.A. Section 723c.

## II.

What I feel is a serious, though subordinate, aspect of the matter will be taken up first.

For the moment it will be assumed, with respect to what was covered in my oral opinion, that, as urged by the Government, my statements therein made, insofar as they go and without change, would be acceptable to the Supreme Court as the findings of fact and conclusions of law required by Rule 52 in regard to all matters embraced in that discussion. Nevertheless, there are numerous issues made by the pleadings which were not passed on or even mentioned in the oral opinion,—save that, in substance, it was said that subsequently there would be opportunity for their consideration or they would be considered if required (O, pp. 18; 405–6; 420–1; 725; 726). In connection with the omission to treat the last mentioned issues in my opinion, it was my definite intention to deal with such of them as are pertinent, to the extent necessary or desired, in findings which would later be made. I thought that I made this clear. In my view, therefore, a failure by the court to fulfill the promise would probably constitute reversible error, if my action were subject to appeal, and certainly it would be inexcusable.

Early in the trial I announced that I hoped to decide the case from the bench. My purpose to do this, if possible, was achieved and I think the result was attributable, in whole or in part, to my confining the opinion delivered to issues which I deemed crucial. I believed that thereby

disposition of the case would be much accelerated. My feeling now is that at least six months, and probably as much as a year, has been saved in the proceedings thus far by the opinion being oral and much of it being composed on the spot.

The Government vigorously contends that I am in error in regarding myself as committed to make findings with respect to issues not disposed of in the oral opinion. On this account I shall assemble from the minutes somewhat extensive extracts from the evidence on the subject.

The taking of testimony was closed August 14, 1940. A conference with counsel was held January 10, 1941, about fixing a time for hearing oral argument on the merits. This argument began March 3 and was finished March 12, 1941. The delivery of my opinion began September 30 and was completed October 9, 1941. In connection with each of these incidents something relevant to findings was stated.

Previous to any of the dates given a plan for delivering an oral opinion had been mentioned; but I have not found the places in the record where this occurred. However, I do not regard it as worth while to spend further time in the search. It is enough to say that my memory is firm that in none of those places can anything be found which in any respect modifies or contradicts what is hereinafter set out.

(1) On August 14, 1940, one of the counsel spoke of wanting "to file requests for findings of fact and conclusions of law." In response, among other things, I said (p. 40673): "I am not going to look at any proposed findings by anybody until after this case is decided. You need not bother about it. It will take six months to make the findings in this case, and I am not going to bother about it until after the case is decided. You can't prepare findings until we get down to them."

Next, after referring to the interpretation by the Supreme Court of the rule on the subject and what it had directed done "with respect to findings," I made these statements (p. 40674): "I am not going to bother about them [findings] or consider them until after the case is decided. We have a program which the judges follow for the most part, * * *."

■ The program was explained to consist generally of three steps: (a) The prevailing party would be required to serve on his opponent and submit to the court "pro-

posed findings." (b) The losing party, if he wished, would prepare proposed counter findings "within a period fixed." (c) Time would be given "for the prevailing party to agree or disagree on the findings." Following my thus outlining the program, I continued (p. 40674): " * * * then in some way that is agreeable and convenient to counsel you are [will be] afforded opportunity to give references to the record in support of your contentions on each side. And I will work all that out agreeably to counsel when the time comes."

A bit later I added (p. 40688): "I told you in the beginning it would be my effort to decide this case from the bench. I have not abandoned that intention. It would take me about two years to write an opinion in this case, and there just is not enough time in life * * * to give that much time to an opinion in any case, * * *."

If there were nothing else in the minutes about findings than what was said in August, 1940, as described above, I feel that this alone was an unambiguous committal peremptorily to require the winner to propose findings and to afford the loser a chance to propose findings.

As my statements at the time obviously imply, my reference was to findings on all issues; that is, even though (Cf. O, pp. 717–8) an oral opinion had already passed on a part of the issues (a proposition which will be taken up in subdivision III of this memorandum). Yet that fact does not narrow my holding so that it excludes issues not discussed or disposed of in the oral opinion.

■ (2) At the January 10, 1941, conference counsel made clear their desire for a decision as soon as possible (T, pp. 40712; 40714; 40715–6. See, also, p. 40719). Thereafter, in the course of colloquy, I made the following remarks (T, pp. 40716–9):

"I have stated, as Mr. Rice says, almost from the beginning of the trial, a desire to follow my usual practice by deciding this case from the bench. * * * I have never said I was going to decide this case from the bench. I said I hoped to. * * * I think that I am not far wrong in the statement that I made at the close of the trial, that if I had to write an opinion on every issue in this case it would take me two years,—and I think that is not much of an over-estimate,—that is to write an

opinion on everything I should treat of. * * *

"If I were to decide the case from the bench, I do not see how it would be possible for me to keep in mind in a way that it is necessary to keep in mind everything that is pertinent. If I were not to undertake to discuss everything, I should have to select what appeared to me as a result of my study, to be the determining factors and, disposing of those, leave the balance to findings. That is what I had in mind doing the last day we were engaged in the trial, that is, dealing only, in an oral opinion, with the decisive questions. I realize that if I did that and followed out the program as to findings that was outlined at that time, there would be a good many things that had not been specifically discussed in an oral opinion, which would leave you gentlemen somewhat in doubt as to how to prepare your findings.

"Well, my thought about that was this, that the prevailing side would go ahead and prepare the findings, and the things that had not been decided already in the oral opinion would be covered in proposed findings just precisely as the prevailing party wanted them, and in the same way, where there had been no specific decision on particular points, the losing party would cover them precisely as he wanted them, numbering them with the same numbers so that I could easily follow them.

"I have got to adopt some such scheme as that in order to make it physically possible for me to decide the case from the bench. * * * I have generally, in rendering oral opinions, put them out either immediately or very soon after the oral argument, but not always; and in this case I think it might very well be that I could not do it immediately."

In my last quoted statement, I emphasized four points. These were that (a) if there were an oral opinion, it would be essential to confine my discussion to the "determining factors" and to "leave the balance to findings" (p. 40718); (b) that if an oral opinion dealt only "with the decisive questions," and I "followed out the program that was outlined" on August 14, 1940, "there would be a good many things that had not been discussed" in the opinion, which would leave counsel "somewhat in doubt as to how to prepare your [their] findings" (pp. 40718–9); (c) that, in such event, "the prevailing party would

go ahead and prepare the findings, and the things that had not been decided already in the oral opinion would be covered in proposed findings just precisely as the prevailing party wanted them, and in the same way, * * * the losing party would cover them precisely as he wanted them",— thus necessarily implying that if there were two sets of proposed findings, I would pass on the differences; and (d) that I was compelled "to adopt some such scheme as that in order to make it physically possible for me to decide the case from the bench" (p. 40719).

I observe no ambiguity in the extracts from the record just summarized. I think they demonstrate that adequate notice was given, more than eight months before I began my decision, that in the event of an oral opinion, there must be findings as to all matters not covered thereby.

(3) On the first and last days of the oral argument on the merits (March 3 and 12, 1941) I was still hopeful that I could decide the case from the bench, but a bit uncertain whether I should be able to do so (pp. 40729–30; 41715–6). In that connection I said (pp. 40730; 41716):

"Counsel have indicated their desire to have as early disposition of the case as possible. If I can render an oral opinion, that will save you a great deal of time. * * *

"Now when we had up the subject I said to you that if I put my decision into oral form, or put my opinion into oral form, I could only deal with the major points, with the points which I conceive to be conclusive. * * *

" * * * if I do that [decide the case from the bench], then I shall have to deal only with the crucial points in the case. It would take me days and days if I were to try to discuss it all orally, and I could not trust myself to carry in my mind all the details as to everything that has to be discussed in this case in the way that I would do if I were giving you a written opinion."

While findings were not specifically referred to at the March, 1941, argument, it was then again pointed out that some issues must be omitted from treatment if there were an oral opinion. It would seem to follow of necessity that there must be findings on those issues. There was certainly no suggestion that any of the issues would not be passed on or that some would be completely ignored.

(4) In the course of my oral opinion I made further remarks on the subject. On the first day (September 30, 1941) I recited the essential features of the previously announced program for settling the findings (pp. 715–7). I also included in my statement the following (O, pp. 17–18):

"Toward the end of the trial I told you that when both sides asked for early disposition that I should be unable to give you that unless I confine myself to crucial issues, and I have found in the course of my work in reaching the point of decision that it is much better that I confine myself to the crucial issues. * * *

"This method of procedure, however, that I shall follow, does not mean that there will be any single issue in this case on which I shall not make a definite finding if there is occasion to do so."

The closing remark about procedure cannot mean less than that there would be definite findings on every relevant issue in this suit. If so, there must be findings on issues not discussed in the oral opinion.

When the program described was announced, neither side interposed an objection. On October 10, 1941, the day following completion of my oral opinion, after referring to the Interstate Circuit case, infra, I added (O, pp. 725–6):

"As I understand that decision, it requires meticulous findings, and understanding it that way that is what I am going to require in this case. I feel I have to. * * *

"As I announced at some time, when counsel on both sides indicated their desire for an early decision, I could not possibly comply with that request unless I confined my oral opinion to the crucial issues in the case, not going into many of the other issues that were not crucial; so that there may be quite a good many things that I have not passed upon. I have considered them all but I haven't embodied them in my opinion, I have not checked them, but I will make findings on them."

What has just been quoted was said after I had finished carrying out the plan I had announced before beginning the delivery of my oral opinion. The omissions from the opinion would have been without possible excuse if, all along, there had not been assurances that findings would be made and conclusions stated later.

In conformity with and with the purpose of carrying out the plan, therefore, on October 10, 1941, I prescribed a schedule of dates for the submission of proposed findings which would afford all parties full opportunity to present and to be heard on them (O, pp. 729–37).

In the circumstances I feel that it would be an obvious breach of faith by the court for it now to deprive, or to do anything which would have the effect of depriving, either side of a chance to submit whatever proposed findings and conclusions it desires that are not inharmonious with my opinion (O, p. 717). If so, then of necessity both branches of the motion should be denied.

I do not now express any view, and it would be speculative to express a view, as to whether the Government is right in its belief that, if I should designate the oral opinion as my findings of fact and conclusions of law, such action would meet the approval of the Supreme Court. Even if I made the designation the Government wishes, however, as already pointed out, it is plain that there would be many issues about which I would continue silent. Moreover, determination of a good portion of these unmentioned issues would depend, wholly or partly, on evidence which is disputed or from which different inferences may be drawn. If, on appeal, the Supreme Court deemed it of consequence to have findings on such issues, it would be in no position itself to make them.

The fact that I felt that I could render a just decision without dealing with the issues thus temporarily put aside for future disposition affords me no warrant for sending the case to the Supreme Court with the record in its present incomplete shape.

I made the assumption near the beginning of the present subdivision II of this memorandum, with regard to the possible attitude of the Supreme Court toward the statements in my oral opinion, solely so as to bring out that the existence of issues outside of and in addition to those discussed in my oral opinion, of itself and alone, creates an insuperable obstacle to granting the first branch of the relief the Government wants. Out of abundance of caution, however, in the interest of clarity I repeat that the making of the assumption is not to be taken as an indication that I think matters dealt with in the opinion need not be covered by findings.

### III.

A more important consideration which, as I feel, compels denial of the motion is that granting it would be a square violation of Rule 52 as its meaning has been unambiguously established by the Supreme Court.

Following the going into effect of Equity Rule 70½ in 1930, down to the decision of Interstate Circuit v. United States, 304 U.S. 55, 58 S.Ct. 768, 82 L.Ed. 1146, in 1938, the inclusion in their opinions by district courts of statements of the substance of the controlling facts and of the controlling applicable propositions of law (Cf. Detective Comics, Inc., v. Bruns Publications, D.C.S.D.N.Y., 28 F.Supp. 399, 401) was accepted by the Supreme Court for eight years (at least sub silentio, so far as disclosed by its opinions) as fulfilling the requirement of the precise provision of the rule, prescribing the duty of trial courts with respect to findings of fact and conclusions of law, which is now under consideration.

In the Interstate Circuit case, however, the Supreme Court, in effect, said that the previous practice, as just described, was erroneous. In that case, where, apart from its opinion the district court appealed from had failed to make "formal findings," the cause was reversed and remanded and in the order of remand explicit directions were given to the trial court "to state its findings of fact and conclusions of law as required by Equity Rule 70½". 304 U. S. pages 57, 58, 58 S.Ct. page 770, 82 L.Ed. 1146.

What Rule 70½ formerly required, and what, by force of the use of the same words, Rule 52 today requires, was stated in the Interstate Circuit case, 304 U.S. pages 56, 57, 58 S.Ct. page 769, 82 L.Ed. 1146 as follows:

"The District Court did not comply with this rule. The court made no formal findings. The court did not find the facts specially and state separately its conclusions of law as the rule required. The statements in the decree that in making the restrictive agreements the parties had engaged in an illegal conspiracy were but ultimate conclusions and did not dispense with the necessity of properly formulating the underlying findings of fact. * * *

"A discussion of portions of the evidence and the court's reasoning in its opin-

ion do not constitute the special and formal findings by which it is the duty of the court appropriately and specifically to determine all the issues which the case presents. This is an essential aid to the appellate court in reviewing an equity case, Railroad Commission v. Maxcy, 281 U.S. 82, 50 S.Ct. 228, 74 L.Ed. 717, and cases cited, and compliance with the rule is particularly important in an anti-trust case which comes to this Court by direct appeal from the trial court."

 Rule 52 is incontrovertibly valid. It is also mandatory; it is as binding on this court as would be a statute in the same terms. Rio Grande Irrigation & C. Co. v. Gildersleeve, 174 U.S. 603, 608, 609, 19 S.Ct. 761, 43 L.Ed. 1103; Weil v. Neary, 278 U.S. 160, 165, 169, 170, 49 S.Ct. 144, 73 L.Ed. 243. See In re G. W. Giannini, Inc., 2 Cir., 90 F.2d 445, 447, 448, 111 A.L.R. 1492.

 In the present case, as yet, I have not complied with Rule 52. Among the deficiencies are the following: I have made "no formal findings." I have not found "the facts specially." I have not stated "separately" the court's "conclusions of law." With few exceptions, I have stated "but ultimate conclusions." I have not,— at least except in a discursive and general way,—formulated "underlying findings of fact." I have discussed only "portions of the evidence." In great part I have engaged in "reasoning." Neither the discussion nor the reasoning constitutes "special" or "formal" findings. So far I have refrained entirely from going into numerous issues made by the pleadings and have not even mentioned the evidence bearing on them. Nor have I "separately" or "specifically" determined, or even made a partial determination of, "all the issues which the case presents."

On the facts, as I see them, it follows that the case at bar comes squarely within the Interstate Circuit case. The opinion says that determination of "all the issues which the case presents * * * is an essential aid to the appellate court in reviewing an equity case * * * and compliance with the rule is particularly important in an anti-trust case."

The language quoted above from the Interstate Circuit case opinion is so clear that I feel that if I should refuse to make findings or to state conclusions, as contemplated by my program announced at the trial, I should be consciously disobeying the Supreme Court. Understanding its requirement in the way I have explained, I feel that I have no alternative except to make the required findings and state the required conclusions in full conformity with Rule 52.

So far as I have discovered, the Supreme Court has not departed from or modified the interpretation put on Rule 52 in the Interstate Circuit case.

Thus in Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, page 373, 59 S.Ct. 301, 306, 83 L.Ed. 221, citing the Interstate Circuit case, it was said: "It is familiar appellate practice to remand causes for further proceedings without deciding the merits, where justice demands that course in order that some defect in the record may be supplied. * * * So, when a District Court has not made findings in accordance with our controlling rule (Equity Rule 70½ * * *) it is our practice to set aside the decree and remand the cause for further proceedings."

See, also, Wichita Royalty Co. v. City Nat. Bank of Wichita Falls, 5 Cir., 95 F.2d 671, 673, 674, affirmed in Wichita Co. v. City Nat. Bank, 306 U.S. 103, 106, 110, 59 S.Ct. 420, 83 L.Ed. 515; Mayo v. Canning Co., 309 U.S. 310, 316, 317, 319, 60 S.Ct. 517, 84 L.Ed. 774; and White v. Johnston, 313 U.S. 538, 61 S.Ct. 834, 85 L.Ed. 1507. Cf. Fleischmann Const. Co. v. United States, 270 U.S. 349, 355, 46 S.Ct. 284, 70 L.Ed. 624.

 For the reasons given, therefore, it seems to me (1) that this court is without authority to dispense with either the findings or the conclusions contemplated by Rule 52 and (2) that, in order to obey the rule, as construed by the Supreme Court,—regardless of the contents of the oral opinion,—findings must be made and conclusions stated on all issues in the present case.

## IV.

Several arguments to the contrary have been advanced by the Government. Each of them will be considered.

 (1) An initial contention, much emphasized by the Government, as I understand it, is as follows: The statement by Mr. Justice Stone and Mr. Justice Black in the Interstate Circuit case, 304 U.S. page 58, 58 S.Ct. 768, 82 L.Ed. 1146, is a dissenting opinion. What was there said is the equivalent of a holding that the designation of my oral opinion as the find-

ings of fact and conclusions of law in the case at bar would be a full compliance with Rule 52(a). Accordingly, it is insisted that I should follow the alleged dissenting opinion (M, pp. 6-7; 14-5; 16-8; 19).

It seems to me, however, that the disagreement between the two groups of justices was wholly a controversy, or is capable of being construed as merely a controversy, with respect to how the record in the Interstate Circuit case should be interpreted. The minority thought that the opinion and decree below contained "findings" (perhaps resting on a stipulation) which were "sufficient for purposes of decision." If so, application of the harmless error rule, Judicial Code sec. 269, 28 U.S.C.A. § 391, hereafter discussed, would have demanded that the district court decree appealed from be not set aside or the case remanded. But, even if what the minority held were in complete accord with the present argument of the Government, I should not be free to adopt it. This is true because I am obligated to follow what the majority held (Cf. Alaska v. Troy, 258 U.S. 101, 111, 42 S.Ct. 241, 66 L.Ed. 487) and that is flatly at variance with the Government's position.

(2) Apparently the Government relies on United States v. H. P. Hood & Sons, D.C.Mass., 26 F.Supp. 672, affirmed in H. P. Hood & Sons v. United States, 307 U.S. 588, 59 S.Ct. 1019, 83 L.Ed. 1478, as being a Supreme Court ruling in its favor. The case was much referred to by the Government at the oral argument (M, pp. 3-6; 9; 15-6; 19) and at p. 17 of its brief it was said that "in the Hood case the court adopted precisely the procedure for which the Government contends in this case." I emphatically dissent from this view.

The opinion of the trial court in the Hood case, 26 F.Supp. page 674, shows these facts: A group of actions (of which the Hood case was one) were "referred to a special master with directions to hear the parties and their evidence, and to make and report his findings of fact to the Court." Hearings were held. The master filed his report. Objection was taken to several of its paragraphs. The objection was overruled and the report confirmed. In the last paragraph of the opinion the court added (page 681 of 26 F. Supp.): "All of the material facts in the case are contained in the Master's report. Insofar as I have dealt with questions of law, my statements in the opinion shall be

regarded as conclusions of law for the purpose of the record."

So far as I have observed, no question was raised in the Supreme Court with respect to compliance with Rule 52. Except briefly to describe the procedure below, there was no reference to the rule. After explaining how issue was joined, it was said (307 U.S. page 591, 59 S.Ct. page 1021, 83 L.Ed. 1478): "A Special Master was charged with the duty of finding the facts in these and similar suits. His report was filed on January 27, 1939. Shortly thereafter, the District Court confirmed the report, sustained both the Act and the Order, and entered a decree for the plaintiffs."

By reason of a master having been employed in the Hood case, what was there decided or what was there said does not affect the interpretation of the provision of Rule 52(a) now under consideration.

In the last sentence of subdivision (a) of Rule 52 it is provided that "The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court." In subdivision (e) (2) of Rule 53 it is provided that "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. * * * The court after hearing may adopt the report or may modify it or may reject it in whole or in part * * *."

Accordingly, it strikes me that, so far from the Hood case being an exact precedent for awarding the Government the relief sought by the instant motion, that case was wholly governed by portions of the rules which were not involved in the Interstate Circuit case and do not at all affect the case at bar.

It is true, as the Government points out, that in the Hood case, near the end, the opinion of the trial court contains the following clause (26 F.Supp. page 681): "Statements of fact above are intended as findings of fact, and statements of legal conclusions, as rulings of law, in accordance with Rule 52 of the Federal Rules of Civil Procedure."

Nevertheless, I think that this addition to the opinion did not remove the procedure actually pursued from being controlled by the portions of the rules relating to masters to which attention has been called above.

Again, it does not appear that any ruling with regard to Rule 52 or Rule 53 was

asked in the Supreme Court (Cf. Gibbs v. Buck, 307 U.S. 66, 78, 59 S.Ct. 725, 83 L. Ed. 1111); nor is there reference in the opinion of the Supreme Court to anything that is pertinent to the controversy over the present motion.

■ (3) At the argument of this motion (M, p. 4) the Government asserted that the Supreme Court is entitled "to waive findings of fact and conclusions of law in a case which is brought up to it, where the opinion is sufficient to guide it in making its appellate decision."

Though the proposition just quoted be sound, it does not seem to me to have any bearing on the interpretation of a rule prescribing a duty which district courts are authoritatively instructed to perform.

Moreover, as previously pointed out, such a rule stands on the same plane with a statute and Section 269 of the Judicial Code, 28 U.S.C.A. § 391, is such statute. In effect, that statute directs appellate courts not to reverse lower courts for mere harmless errors they commit. Where the opinion of the trial court appealed from "is sufficient to guide" the Supreme Court "in making its appellate decision," a reversal manifestly would be a violation of the Judicial Code. Though the omission of findings were an error, if the lower court opinion be "sufficient" to enable the appellate court to render a correct decision, then obviously the error would be harmless. The use of the word "sufficient" in the clause quoted from the Government's brief makes this true. Cf. Segurola v. United States, 275 U.S. 106, 109, 110, 48 S.Ct. 77, 72 L.Ed. 186; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 235, 60 S.Ct. 811, 84 L.Ed. 1129.

The decisions of the Court of Appeals for the District of Columbia in Societe Suisse Pour Valeurs De Metaux v. Cummings, 69 App.D.C. 154, 99 F.2d 387, 389, 390, and Goodacre v. Panagopoulos, 72 App.D.C. 25, 110 F.2d 716, 717, 718, are good examples of an appellate court refraining from reversing a case because of harmless error by the court below.

In those cases the trial court failed to find facts or to state conclusions of law, as it was required to do in one instance by Equity Rule 70½ and in the other, by Rule 52(a). This was held to be error. Yet it was further held that this did not compel a reversal because,—plainly pursuant to Section 269 of the Judicial Code, 28 U.S. C.A. § 391,—the appellate court satisfied itself from other material in the records that the results were right.

■ Although I think that in the case at bar my determinations of the issues treated in my oral opinion (if correct) were enough to defeat the Government's claim in this suit, yet that fact would not justify me in breaching Rule 52(a) nor in subjecting the defendants to the peril of a reversal because of my failure to obey the rules.

(4) The Government claims that four Massachusetts district court decisions sustain it. These are Foster v. United States, D.C., 25 F.Supp. 837; Cook v. United States, D.C., 26 F.Supp. 253; Proctor v. White, D.C., 28 F.Supp. 161; and Paine v. Welch, D.C., 33 F.Supp. 341, reversed on another point in Welch v. Paine, 1 Cir., 120 F.2d 141. In substance, the facts in all of these were the same and will be brought out, by way of illustration, through a recital of what the opinion in the Foster case contains. 25 F.Supp. 837, 838.

After stating that the facts were not in dispute, these were set out in six paragraphs in the Foster case. The court then added (page 838 of 25 F.Supp.) that "The foregoing are my findings of fact, required by Rule 52(a) of the Federal Rules of Civil Procedure. * * * I rule, therefore, that the presumption of death has not been rebutted, and the plaintiff is entitled to the benefits of it in asserting her claim under the policy. * * * Judgment may be entered in favor of the plaintiff * * *."

If the four decisions referred to above had been reviewed by the Supreme Court, as seems to me, it would have been surprising if any of them had been reversed. The facts were so fully recited that, despite the error of commingling in the same paper with findings of fact a "discussion of portions of the evidence," "the court's reasoning" and citation of an authority, I surmise that if the case had gone to an appellate court, that court would have affirmed in compliance with its harmless error statutory duty. Otherwise, I am impressed that there would have been a flagrant sacrifice to mere labeling, quite out of harmony with the attitude and practice of courts generally today.

■ Even, though, however, I be wrong on the last point, the opinions relied on by the Government having been rendered by a district court, indisputably they would furnish no warrant whatever

for this court's refusal to follow a decision or decisions of the Supreme Court directly in point.

■ Again, if the opinions of the Massachusetts district court be deemed fully in accord with the Government's interpretation of the first part of Rule 52(a), I think there is an additional reason why I should not follow them. This is that decisions of this court (per Woolsey, J.), which are squarely the other way, have stood for more than two years, without being reversed or modified on the ruling for which they are here cited (Penmac Corporation v. Esterbrook Steel Pen Mfg. Co., 27 F. Supp. 86, reversed on another point in 2 Cir., 108 F.2d 695; Detective Comics, Inc., v. Bruns Publications, 28 F.Supp. 399, affirmed in 2 Cir., 111 F.2d 432, except with respect to one term of an injunction, which was modified and is not material here).

Both of the decisions of Judge Woolsey just mentioned have been cited by Judge Mandelbaum of this court (Biermann v. Shea, 28 F.Supp. 213, 216, and Texas Co. v. Higgins, 32 F.Supp. 428, 429, 430, 431) and I have discovered no opinion by a judge of this court at variance with either of those decisions of Judge Woolsey. In addition, the Detective Comics case has been cited with apparent approval by Judge Watkins of the District Court for the Northern District of West Virginia. In re Hill Store Co., 28 F.Supp. 785, 787. See, also, In re Imperial Irr. Dist., D.C.S.D. California, 38 F.Supp. 770, 772, and an article by Judge Nordbye published in 1 F.R.D. at pages 28–31.

In the Penmac case, after referring to the Interstate Circuit case and Rule 52(a), Judge Woolsey said (page 87 of 27 F. Supp.): "* * * it is now a work of supererogation to write a considered and detailed opinion on the facts in what used to be an equity cause and is now called a non-jury cause, for the place of the opinion must now be taken by formal findings of fact and conclusions of law, separately stated and numbered. * * *"

In the Detective Comics case, after directing counsel to prepare and submit proposed findings of fact and conclusions of law (Cf. Societe Suisse Pour Valeurs De Metaux v. Cummings, 69 App.D.C. 154, 99 F.2d 387, 390), somewhat along the line that I have adopted in the case at bar, Judge Woolsey made this statement (page 401 of 28 F.Supp.): "The necessity for this form of procedure has been approved by the United States Supreme Court in a case which was decided under Equity Rule 70½, 28 U.S.C.A. following section 723, Interstate Circuit, Inc., v. United States, 304 U.S. 55, 56, 57, 58 S.Ct. 768, 82 L.Ed. 1146. Before that case, I had always made out findings of fact in my opinion, and had then said at the end thereof that the opinion should stand as the findings of fact and conclusions of law in the cause. The Supreme Court, under the case just cited, literally enforced Rule 70½ and ended that practice."

■ The District Court for the Southern District of New York has thirteen judges. When one of them has put out a considered opinion on a question of law, it is felt generally by his associates that good administration requires them to accept it unless it be reversed or modified by a higher court or unless some other judge of this court before whom the same question arises thinks that the ruling previously made by his associate was clearly erroneous. The adoption of such an opinion by his brethren is not because they do not feel free to disagree with the author, but, in part at least, because they feel that, so far as practicable, it is best to preserve uniformity in their rulings on law questions.

A more important reason for following the usual course described is that it is by this means, and perhaps only by this means, that an effective effort can be made to prevent what they regard as an evil. This evil is that, some times, members of the bar attempt to select a judge before whom to try a particular case or seek to bring their cases before particular judges. Cf. National Silver Co. v. Federal Trade Commission, 2 Cir., 88 F.2d 425. See, also, Appleton v. Smith, C.C.Ark., 1 Fed.Cas. page 1075, No. 498; Wakelee v. Davis, C.C. S.D.N.Y., 44 F. 532, 533; Zinsser v. Krueger, C.C.N.J., 45 F. 572, 574, 575; and Shreve v. Cheesman, 8 Cir., 69 F. 785, 791.

Possibly I should add, however, that, as indicated by this memorandum, I fully agree with the opinions of Judge Woolsey in the cases cited.

(5) The Government also cites United States Trust Co. of New York v. Sears, D.C.Conn., 29 F.Supp. 643. There all allegations of fact in the complaint were expressly admitted by the answer and all allegations of fact in the defenses were admitted by a writing lodged with the court.

The holding was as follows (page 645 of 29 F.Supp.): "Since, therefore, all statements of fact made on behalf of either the plaintiffs or the defendant stand admitted in the documents on file, no formal findings of fact by the court are required. Rule 52(a), F.R.C.P."

It seems manifest that this case has no bearing on any issue in the case at bar.

 (6) The Government urges that if time be taken to settle findings and conclusions, in conformity with the schedule prescribed on October 10, 1941 (O, pp. 729, 737), it will be deprived of its right to a speedy appeal provided for in the Expediting Act, 15 U.S.C.A. § 29. I feel unable, however, to adopt the reasoning by which it has been sought to support this position.

It is true that the Expediting Act removed numerous obstacles which previously had stood in the way of getting an early hearing in an anti-trust case. These are well summarized in United States v. California Canneries, 279 U.S. 553, 558, 49 S. Ct. 423, 73 L.Ed. 838. Nevertheless, as I see it, none of the provisions of the statute there mentioned nor any other of its provisions has the slightest bearing on the interpretation of Rule 52.

Indisputably Rule 52 is valid and governs me. I shall, therefore, obey it implicitly as I understand it. I should be recreant to my duty if I did otherwise. It is wholly without my province to disregard a rule on the ground (if such ground existed) that I thought its policy wrong. If, therefore, Rule 52 be so framed that its enforcement would prevent the Government from getting an early hearing of an appeal in an anti-trust case, I should not be justified, on that account, in refusing loyally to obey the rule.

 I must assume that when the Supreme Court adopted the rule, as well as when it adopted Equity Rule 70½, it knew that compliance with either by trial courts would consume a good deal of the time of their judges and in some degree would retard final disposition of cases to which the rule applies. So also I take it as certain that when the Interstate Circuit case was decided, the Supreme Court intended that district judges should apply the rule in all non-jury cases, whether or not appealed, and realized that compliance with the rule, as then clarified, would make a very considerable draft on the time and energies of district judges; also that to the extent that this occurred,—at least in a district, such as Southern New York, where the volume of non-jury cases is large and the trials of a goodly proportion of them are long,—the effort to keep calendars up to date might thereby be frustrated. Manifestly, however, the Supreme Court concluded that the advantages of the rule would outweigh the disadvantages resulting from requiring district judges to consume a substantial proportion of their time in executing the duties imposed by the rule. At any rate, if delay in terminating particular classes of cases be a necessary incident, that would not affect the interpretation of the rule nor would it justify a district judge in disregarding it.

 Moreover, if it were outright conceded that the rule, as I conceive it to be construed by the Supreme Court, is in flat opposition to the Expediting Act, that fact also would lend no assistance to interpreting the rule. This is true because the Act of June 19, 1934, c. 651, 48 Stat. 1064, sec. 1, 28 U.S.C.A. § 723b authorizing the Supreme Court to make the civil procedure rules, provides that, from the date of their going into effect, "all laws in conflict therewith shall be of no further force or effect."

 If, therefore, adherence to the program of having findings and conclusions, in addition to the opinion, be objectionable, as I suggested at the argument (M, pp. 10–15), the sole remedy (if any) is through application to the Supreme Court to release me from observing the rule in this case,—a result which would be heartily welcomed.

### V.

 Pursuant to Rule 83 of the Federal Rules of Civil Procedure, this court adopted Civil Rule 20 with respect to findings of fact. In part this is as follows: "All findings of fact by the court or a master shall be embodied in consecutively numbered paragraphs, the contents of which shall be limited so far as practicable to a single set of circumstances."

If my oral opinion be findings and conclusions in harmony with Rule 52, as such it would be at least out of harmony with local Civil Rule 20. As I said at the oral argument (M, pp. 19–20), Rule 20 governs me. In re G. W. Giannini, Inc., 2 Cir., 90 F.2d 445, 447, 448, 111 A.L.R. 1492. However, I do not regard this particular rule as a serious hindrance. I say this because

I am satisfied that my associates would be willing to repeal that rule if by so doing they could free me from the necessity of making findings, as contemplated by the proposed program, and thus permit me to resume general work of the court.

## VI.

 The Government asks that an order dismissing the petition, in accordance with my oral opinion, be made without waiting for findings and without further delay on any account. If such an order were made, an appeal from it would lie to the Supreme Court and, as the Government has announced, would be immediately taken. Indeed, the Government declares that the purpose of its endeavor to procure a final order is to enable it to get the case into the Supreme Court at the earliest possible moment. There is no dispute about what the Government plans to do if a dismissal order be obtained.

If a final order were entered and an appeal therefrom perfected, however, clearly the jurisdiction of this court to make findings would thereupon be at an end. Draper v. Davis, 102 U.S. 370, 371, 26 L. Ed. 121; Keyser v. Farr, 105 U.S. 265, 266, 26 L.Ed. 1025; Hovey v. McDonald, 109 U.S. 150, 157, 3 S.Ct. 136, 27 L.Ed. 888; Berman v. United States, 302 U.S. 211, 214, 58 S.Ct. 164, 82 L.Ed. 204. I think that the Supreme Court has gone further; it has specifically ruled, or at least strongly indicated, that making findings is one of the things as to which jurisdiction is terminated by an appeal being perfected. Generes v. Bonnemer, 7 Wall. 564, 565, 19 L.Ed. 227; Avendano Bros. v. Gay, 8 Wall. 376, 377, 19 L.Ed. 422; Kearney v. Case, 12 Wall. 275, 280, 20 L.Ed. 395. Cf. Gibbs v. Buck, 307 U.S. 66, 78, 59 S.Ct. 725, 83 L.Ed. 1111. See also Bethell v. Mathews, 13 Wall. 1, 2, 3, 20 L.Ed. 556; Martin v. Drexel Ice Cream Co., 7 Cir., 80 F.2d 768, 770.

For the reason that appealing from a final order would deprive this court of authority to make findings, I feel that the second branch of the Government's motion should fall with the first branch.

If the case were transferred to the Supreme Court in the way desired by the Government and retained there, necessarily it would be heard and disposed of on the oral opinion, as a substitute for findings and without additional findings with regard to issues discussed in the opinion or issues not mentioned therein. It is in this sense that, as I said at the beginning of subdivision I of this memorandum, the fate of the two branches of the motion will or may be the same.

If I be right in the view expressed, it follows that there should be no final order until after findings shall have been made in accordance with Rule 52(a).

## VII.

While without significance in determining the motion, I wish to add two things:

(1) I thought at the time, and I still think, that the program laid out on October 10, 1941, if joined in and diligently pursued by counsel, will get this case to the Supreme Court sooner than any other available method.

(2) In a case such as the one at bar, —with a record estimated to be upwards of 58,000 pages and full of complications, —I feel confident that I should draw down on myself well merited criticism if, even on the request or with the consent of all parties, I should fail to make findings of fact and state conclusions of law substantially in accordance with the scheme I have prescribed.

Accordingly, upon the grounds assigned herein, the motion is denied. Settle order on four days' notice. I make the time longer than usual because some of the counsel on both sides are out of New York.